## Franklin D. Cossitt

*v.*

## James B. Hobbs.

| 56 | 231 |
| 124 | 449 |

| 56 | 231 |
| 146 | 444 |

| 56 | 231 |
| 174 | 601 |

| 56 | 231 |
| 79a | 209 |

| 56 | 231 |
| 100a | ¹ 43 |

1. STATUTE OF FRAUDS — *sale of land* — *what constitutes a sufficient memorandum in writing.* The owner of a tract of land, who had given authority to a firm of real estate agents to sell the same, wrote upon the back of one of their business cards, as follows: "Will take for the north-west quarter section 23, 160 acres, less R. R. $300 per acre, one-third cash, balance one and two years, eight per cent," which was signed by him. On the same card, a person desiring to purchase, wrote : "Your terms are accepted," and signed the same : *Held*, in an action by the

purchaser against the vendor to recover damages for a failure on the part of the latter to perform his contract, this was a sufficient memorandum in writing to take the case out of the statute of frauds.

2.　On the same day the purchaser thus accepted the terms proposed, the agents of the vendor signed and delivered to the purchaser this note or memorandum: "Received $1,000, on the sale to J. B. Hobbs, this 16th day of February, 1869, 10:40 A. M., the north-west quarter of section 23 on N. W. R. R. owned by D. F. Cossitt, at $300 an acre, third cash, and one and two years, eight per cent." This writing by the agents, however, gave no additional validity to the contract; the owner had written his terms and they were accepted, and thus an end was put to the bargain, and it required no subsequent ratification on his part.

3.　DESCRIPTION *of the premises — how properly shown.* On the trial of the cause, in addition to the memoranda mentioned, the plaintiff gave in evidence an abstract of title to the premises and a certificate of the survey thereof, which had been delivered to him by defendant after the contract was made, and these were held to have been made out and delivered by force of the first memoranda, becoming a vital part of the contract, and leaving nothing of the description of the land sold to be supplied by parol.

4.　SAME — *parol evidence.* But, independently of the abstract and survey, for the purpose of identifying the premises sold, resort might be had to parol proof.

5.　INSTRUCTIONS not based upon the evidence may properly be refused.

6.　And instructions, which are substantially embodied in others which are given, may be refused.

APPEAL from the Superior Court of Chicago; the Hon. WILLIAM A. PORTER, Judge, presiding.

The opinion of the court contains a sufficient statement of the case.

Messrs. WALKER, DEXTER & SMITH, for the appellant.

Messrs. HOYNE, HORTON & HOYNE, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit, brought to the Superior Court of Chicago, by James B. Hobbs against Franklin D.

Cossitt, to recover damages for a failure to perform a contract for the sale and conveyance of a certain tract of land.

The issues were, non-assumpsit and the statute of frauds and perjuries. The jury found for the plaintiff, and the court rendered judgment thereon, a motion for a new trial by the defendant having been denied.

To reverse this judgment the defendant appeals.

The principal question is, was there a sufficient note or memorandum in writing, of this contract, to answer the requirements of the statute of frauds and perjuries? The provision of the statute is, that no action shall be brought upon any contract for the sale of lands, tenements or hereditaments, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized. R. S., ch. 44, § 1.

This statute has been discussed by courts most fully, and these rules, among others, are deduced from it: Lawful authority may be conferred by parol. *Doty* v. *Wilder*, 15 Ill. 407; *Johnson* v. *Dodge*, 17 id. 433. There is no form of language necessary; any writing from which the intention can be gathered, as in other contracts, will be sufficient. Any kind of a writing, from a deed down to mere hasty notes or memoranda in books, papers or letters, will suffice. *McConnell* v. *Brillhart*, 17 id. 354. But the writings, notes or memoranda, or whatever they may be, must contain on their face, or by reference to others, the names of the parties, vendor and vendee, a sufficiently clear and explicit description of the thing, interest or property, as will be capable of identification and separation from other of like kind, together with the terms, conditions (if there be any) and price to be paid, or other consideration to be given. Id. 361. The party to be charged, or his lawfully authorized agent, must sign it. Id. The contract, note or memorandum thereof must be signed with intent to enter into it, and it must be mutual, reciprocal,

and upon a good and valid consideration. Id. Do the writings in evidence fulfill these conditions? It is conceded that Whipple and True had authority to sell the land.

The defendant, on the back of one of the business cards of Whipple & True, real estate agents in Chicago, wrote with his own hand, the following:

" Will take for the N. W. quarter Sec. 23, 160 acres, less R. R., $300 per acre, one-third cash, bal. 1 and 2 years, 8 per cent.                                        F. D. COSSITT."

On the same card, on the 16th February, 1869, at 10 : 40 A. M., the plaintiff caused to be written these words:

" Your terms are accepted.                    J. B. HOBBS."

On the same day, Whipple & True, as agents for the defendant, signed and delivered to the plaintiff this note or memorandum:

"Received $1,000 on the sale to J. B. Hobbs, this 16th day of February, 1869, 10 : 40 A. M., the N. W. ¼ of Sec. 23, on N. W. R. R., owned by F. D. Cossitt, at $300 an acre, ⅓ cash and 1 and 2 years, 8 per cent.

"WHIPPLE & TRUE, Agents for F. D. Cossitt."

It is objected by appellant, that in neither of these writings are the premises sufficiently described, though he admits that the capital letters " R. R.," in the first, would denote that it was on some railroad which occupied a portion of the tract, and " N. W. R. R.," in the second, that it was on the Northwestern Railroad, a road running north-west from Chicago, through the State of Wisconsin and into the State of Iowa. So far, then, as this goes, some locality is given to the quarter section, and to that extent is capable of identification and separation from any other quarter section not bearing those numbers. The names of the parties fully appear, that of the vendor to be charged, in his own handwriting, and the price and terms are no less distinct. It is mutual, for an action would lie against the plaintiff on his refusing to pay and perform, and the con-

sideration is valid, and that the contract was signed by the party to be charged, with the full intent, at the time of signing it, to perform it, is neither doubted nor denied, and that he signed it voluntarily and knowingly is not questioned.

In *Doty* v. *Wilder*, *supra*, which was a bill for the specific performance of a contract for the sale of a house and lot belonging to Wilder, the entry on the auctioneer's sale book was, "house and lot adjoining southern depot, on Clark street, owner R. Wilder, amount $4,700, purchaser, T. Doty. Remarks, one-half cash, one-half in one year."

This court held this entry was a sufficient memorandum of the contract of sale. It states the names of the vendor and vendee, the amount of the purchase money, and the time of payment. It also contains a sufficient description of the property. It is described as a house and lot owned by the defendant, adjoining the southern depot, on Clark street. There are references in this description by which the lot can be identified and distinguished.

It is also held in this case, that the memorandum of the auctioneer must, on its face, or in connection with some other writing, contain every thing necessary to show the contract between the parties, so that there be no need of parol proof to ascertain the terms of sale and the intention of the parties.

It was also said that the bill alleges that the lot was the only one with a house upon it adjoining the depot, and that the defendant owned no other lot answering to this description. If the defendant had conveyed the lot by the same description there could not be a doubt but that his grantee would hold the property.

The third count in the declaration alleges, that the defendant was to deliver an abstract of title to the premises within ten days after the 16th of February, 1869, and then avers that on that day he paid to defendant $1,000 earnest money on account of the purchase and of the one-third cash payment, and that in part performance of his bargain, on the 17th of February, 1869, the defendant furnished plaintiff an abstract of

title to the premises, and also delivered to the plaintiff a certificate of the survey thereof.

On the trial of the cause these memoranda, this abstract of title and this certificate of the survey of the land bargained for, were put in evidence without objection, and as the two latter instruments of evidence were in writing, and connected with the first memoranda, in fact made out and delivered by the defendant, by force of those memoranda, they become a vital part of the contract, and leave nothing of this description of the land sold to be supplied by parol. The written documents furnished by the defendant himself identify, beyond all question, the tract of land sold, and must conclude him. This proof would justify a demand for a specific performance, had a bill been exhibited for such purpose.

But, independent of this, for the purpose of identifying the premises sold, resort might be had to parol proof, as in *Whittaker* v. *Sumner*, 9 Pick. 311. There it was held, that an attachment on mesne process of all the interest of the defendant to a certain parcel of land situate on Pleasant street, in Boston, is sufficiently certain, if the defendant was interested in only one parcel in such street, and parol evidence was admissible to show the parcel to which such description was intended to apply.

This court, in *McConnell* v. *Brillhart, supra*, while saying that contracts within the statute of frauds were no more subject to change or alteration, or proof of their contents, than other written contracts, and that the same degree of certainty required in other written contracts was sufficient in contracts under the statute, and that the maxim, "*id certum est, quod certum reddi potest*," was equally applicable to both, also held, that latent ambiguities might be explained by parol.

In this case, the contract rested wholly in letters passing between the vendor and vendee, the complainant, and described the land as "a half section — terms cash in hand." This letter was written in response to one from Dr. Michener, acting as the agent of the purchaser, inquiring if he would dispose of

some land lying contiguous to his, and on what terms? The court say, the description of the land as a half section contiguous to Dr. Michener's is susceptible of identification by parol, by showing that the half section described in the bill had been entered by McConnells, father and son; that it lay adjoining the only land owned by witness, or was the only land owned by them adjoining any land of witness. On this point, reference is made by the court to *Venable* v. *McDonald*, 4 Dana, 336, where it was held, that extraneous facts, referred to in the description of a tract of land in a deed, as, "land on which A. B. then resided," may be proved by parol, and the identity of the land, or whether a particular tract is or is not within the description of the deed, is matter of fact for the jury to determine.

In the case before us, the jury have found the facts for the plaintiff, on evidence to which no objection was made.

Cases are too numerous in the books to allow of citation, where parol evidence has been admitted to supply a defective description of property sold. Those cited are deemed sufficient on this occasion.

Some effort was made by appellant to show that this tract of land had been sold by another agent employed by appellant, a few minutes prior to the hour at which the bargain was closed by paying $1,000 earnest money by appellee, and that a contract to sell was to be subject to the approval of appellant; but it seems to us, this sale was substantially made by the appellant himself, by his writing on the back of the card. The subsequent writing by the agents did not give the contract any additional validity. Appellant wrote his terms, and they were accepted, and thus an end was put to the bargain. No ratification on his part was necessary. It is absurd to contend appellant's approval was necessary, when he made his own terms, and they were promptly approved. From that moment there was no loop-hole of retreat.

Exceptions have been taken to some of the instructions withheld from the defendant.

Six instructions were given for the appellant, which appear to us to embody all the law applicable to the facts of the case, to which appellant was entitled, and placed his case in an attitude before the jury as favorable as he could demand. The instructions refused, numbered two, three, four, seven, eleven and twelve, were properly refused. In regard to the second and third, the introductory parts thereof were doubtless good law, but other matters were incorporated about which there was no evidence. The matters contained in the fourth were substantially given to the jury in other instructions. As to the seventh, we do not find any evidence in the record that appellant had, prior to the sale to appellee, revoked the authority given to Whipple to sell, and was properly refused. The eleventh instruction is not discussed by appellant. The twelfth he insists should have been given. We think it was substantially given in the third instruction for the defendant, and which appears to us to cover the whole case. That instruction is as follows:

"Although the jury shall find, from the evidence, that the defendant, Cossitt, authorized the firm of Whipple & True to sell for him the premises in question, for three hundred dollars ($300) per acre, one-third cash and the balance in one and two years, with interest at the rate of eight per cent per annum, yet, if they shall also find, from the evidence, that the said Cossitt reserved to himself the right of disposing of said premises by himself, or through other agents, then, although you shall find, from the evidence, that the said Whipple did subsequently sell said premises to the said plaintiff, upon the terms authorized, and made a contract in writing to that effect, with the said plaintiff, yet, if you shall further find, from the evidence, that before the said Whipple had made any note or memorandum in writing, of said sale, to the said plaintiff, the said Cossitt, or any lawfully authorized agent for him, had made a valid sale of said premises, and notified said Whipple of such sale, then the said Whipple had no right subsequently to enter into a written contract with the said plaintiff for the sale of said premises.

And if the jury believe, from the evidence, that the written contract or memorandum in writing, read in evidence, was made under such circumstances, and after the said Whipple had been informed by said Cossitt, that said premises had been sold, then such memorandum or contract is not binding upon said Cossitt, and the jury must find for defendant."

The question, whether a sale to be effected by Whipple, was to be submitted to the approval of appellant, was plainly put to the jury by this instruction.  Whipple testifies he was not required to do so, while appellant testifies he was.  The jury have settled that by their finding under this instruction. The question of notice to Whipple of the sale by Rees was also before the jury, and they have found that it was not received until after Whipple had made the contract with appellee.

In looking at the whole case, as it appears in the record, the declaration of appellant that Hobbs ought to have the land, that it was fairly his, the furnishing by appellant on the next day after the sale the abstract of title and copy of the survey, leaves little room for doubt as to the intention of the parties, and that the justice of the case is with the verdict is very evident.

Perceiving no error in the record, the judgment must be affirmed.

*Judgment affirmed.*