JOSEPH J. MITCHELL ET AL. *v.* THE A & B
COAL COMPANY, INC.

MALTBIE, C.J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued April 1—decided May 1, 1947

*Abraham R. Friedman,* with whom, on the brief, were *Moses A. Berman* and *Samuel H. Friedman,* for the appellants (plaintiffs).

*Simon J. Beizer,* with whom was *Morris G. Beizer,* for the appellee (defendant).

JENNINGS, J. The plaintiff sought damages and specific performance of an agreement claimed to have been made by the defendant to sell its property. The defendant demurred, substantially on the ground that it did not appear that it had signed any memorandum sufficient to satisfy the Statute of Frauds. The trial court sustained the demurrer and the plaintiffs appealed.

The complaint was in two counts. The first count contained the following allegations: The defendant owned the property in question which was occupied by the plaintiffs as tenants. On June 6, 1946, the plaintiffs agreed to buy and the defendant to sell the property for $18,000. The plaintiffs gave and the defendant accepted a check for $500 as a deposit on the purchase price. The check remained in the hands of the defendant's agents with its knowledge and consent. The defendant also signed a written agreement to pay its agents $800 commission on the sale. An inventory was made by the parties and on June 8, 1946, the defendant notified the plaintiffs that it

would not perform its agreement. The plaintiffs were and are ready, willing and able to perform.

The second count alleged a written undertaking signed by the defendant whereby it hired Heffron and Bennett to sell the premises to any person who would meet the terms set forth. The plaintiffs met the terms. The defendant refused to perform.

In response to an order for oyer the plaintiffs alleged that their agreement to buy was oral and they filed copies of two documents. The first was signed by the defendant and was entitled "Exclusive Agency Contract." It appointed Heffron & Bennett exclusive agent for the sale of the real estate in question and agreed to pay it a "commission of $800.00 when a customer has been produced ready, able and willing to purchase said property at the price and terms . . . stated, or at an offer acceptable to the seller." The second was a check for $500 signed "Katie S. Mitchell." On the back this appeared: "Deposit on 602 Tolland St., Property Full Price, $18,000."

"No civil action shall be maintained upon . . . any agreement for the sale of real estate . . . unless such agreement, or some memorandum thereof, be made in writing, and signed by the party to be charged therewith, or his agent; . . ." General Statutes § 5982. "The note or memorandum of sale, required by the statute, must state the contract with such certainty, that its essentials can be known from the memorandum itself, without the aid of parol proof, or by a reference contained therein to some other writing or thing certain; and these essentials must at least consist of the subject of the sale, the terms of it and the parties to it, so as to furnish evidence of a complete agreement." *Nichols* v. *Johnson*, 10 Conn. 192, 198; *Miller* v. *Vordenbaum*, 105

Conn. 636, 638, 136 A. 382. The agreement sought to be enforced concerned the sale of land and the only document signed by the party to be charged was the exclusive agency contract made with the brokers. This does not identify the purchaser, one of the essential elements of the memorandum. *Shoag* v. *Sheftel,* 99 Conn. 541, 543, 121 A. 799; 2 Page, Contracts (2d Ed.) § 1338; 2 Williston, Contracts (Rev. Ed.) § 569; 27 C. J. 275; 37 C. J. S. 677, § 193. It does not, therefore, even show that any agreement at all had been made at the time the memorandum was signed. *Peoria Grape Sugar Co.* v. *Babcock Co.,* 67 F. 892, 894; *Kohlbrecher* v. *Guettermann,* 329 Ill. 246, 251, 160 N. E. 142; 49 Am. Jur. 708, § 404. The memorandum was insufficient.

This conclusion is not affected if a third document, printed in the record and filed by the plaintiffs after the demurrer was in court, is considered. It appears to be an inventory of personal property on two sheets of paper. The first is headed "To Mitchell" and the second "To Byrnes." At the bottom of the second sheet appears the following: "Catherine & Joseph Mitchell Gross in Orders for $600 make an offer 196 Ton Coal Profit of $700." This paper, especially the last quoted portion, is meaningless on its face, is apparently not signed by the defendant, and is not evidence that a contract had been entered into. It was not mentioned in the memorandum of decision of the trial court, probably because it was filed late.

The plaintiffs seek to avoid this result by reading all of the exhibits together, reinforced by the allegation of the complaint, admitted by the demurrer, that the plaintiffs agreed to buy and the defendant to sell. In the first place, the documents cannot be read together because the contract signed by the defend-

ant refers to no other document in such terms that it can be identified. *Nichols* v. *Johnson,* supra; *Devine* v. *Warner,* 76 Conn. 229, 233, 56 A. 562; Restatement, 1 Contracts § 208. In the second place, even if they are read together the identity of the purchaser is not made definite. It does not appear that any admissible oral testimony could cure the defects. *Jacobson* v. *Hendricks,* 83 Conn. 120, 126, 75 A. 85.

There is no error.

In this opinion the other judges concurred.